## In re TIG INSURANCE COMPANY.

### No. 09–05–253 CV.

Court of Appeals of Texas, Beaumont.

Submitted June 27, 2005.

Decided Aug. 11, 2005.

Robert A. Shults, Jacob A. DeLeon, Ellen E. Slavin, McFall, Sherwood & Breitbeil, PC, Houston, for relator.

Peter T. Martin, Martin Keener Mason Stutz, LLP, Dallas, Timothy W. Ferguson, The Ferguson Firm, Beaumont, for real parties in interest.

Before GAULTNEY, KREGER and HORTON, JJ.

## OPINION

PER CURIAM.

This dispute involves discovery requests submitted in an insurance coverage case between Henry C. Beck Company (Beck) and TIG (formerly known as Transamerica Insurance Company). Beck is a construction company, and is a defendant in several personal injury suits in which it is alleged that Beck is liable for damages due to its exposing claimants to asbestos between 1960 and 1990. Beck alleges that the suits claiming asbestos-related injuries have been filed in Texas, and elsewhere. In this suit, Beck sued TIG and four other insurance carriers that allegedly provided general liability coverage to Beck between 1960 and 1990. Beck alleged TIG provided commercial liability coverage from November 1, 1969 to November 1, 1972. Through its suit, Beck sought damages for breach of contract, Insurance Code violations, and declaratory relief.

Beck served a request to produce on TIG pursuant to Tex.R. Civ. P. 192.3(b). Through its request, Beck requested documents from TIG for a twenty-six year period during which some of the asbestos claimants that sued Beck might have been exposed to asbestos. Beck also requested documents that reflected TIG's position pertaining to construing policies TIG had issued since TIG's inception in 1911. TIG timely filed objections to all of the requests, including objections to most of the requests on the basis that they were overly broad.

Relator TIG filed a petition for a writ of mandamus complaining of an order overruling TIG's objections to Beck's 113 requests to produce and the trial court's award of $10,000 in attorney's fees against TIG. At the hearing on objections, Judge Gary Sanderson overruled all of TIG's objections, and ordered production to all of the 113 requests as propounded, and without modification. Therefore, we apply the law to the requests as propounded by Beck, and review the rulings of the trial court on TIG's objections to determine whether the trial court followed and applied settled law regarding discovery.

■■■■ On multiple occasions in the past sixteen years, the Texas Supreme Court has addressed issues concerning overly broad discovery. The principles of those cases that we apply to resolving this discovery dispute are:

(1) Requests to produce must specify the items to be produced or inspected with reasonable particularity. TEX.R. CIV. P. 196.1(b); *Loftin v. Martin*, 776 S.W.2d 145, 148 (Tex.1989)(orig.proceeding);

(2) Discovery may not be used as a fishing expedition. *K Mart Corp. v. Sanderson*, 937 S.W.2d 429, 431 (Tex.1996)(orig.proceeding); *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex.1995)(orig.proceeding); *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 814 (Tex.1995)(orig.proceeding);

(3) Requests must be tailored to include only matters relevant to the case. *In re American Optical Corp.*, 988 S.W.2d 711, 713(Tex.1998)(orig.proceeding);

(4) Discovery orders "requiring document production from an unreasonably long period or from distant and unrelated locales" are impermissibly overbroad and are subject to correction by mandamus. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex.2003)(orig.proceeding);

(5) To discover insurance policies, the proponent of the discovery must show that the policy is applicable to a potential judgment. *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex.2004)(orig.proceeding); and

(6) To determine whether information beyond the policy is discoverable in a particular case, "courts must ascertain if the information is discoverable under Rule 192.3(a)'s general scope-of-discovery test." *Id.* at 303; see also TEX.R. CIV P. 192.3(a).

All but a few of the discovery requests propounded by Beck suffer from one to four inherent problems. First, the requests are not restricted to the policy years in which TIG allegedly issued policies to Beck, and as a result many of the requests are overly broad on their face under Texas discovery rules. Second, there was no evidence to demonstrate that TIG might have liability under any of the policy years for which it was requested to produce policies because there was no showing that individual asbestos claimants that filed suit against Beck alleged they were exposed to asbestos during any of the three years that TIG provided general liability coverage to Beck. Third, many of the documents or categories of documents are insufficiently specific to put TIG on fair notice of the documents it was ordered to produce. As a result of these three problems, a fourth problem arises with respect to many of the requests because the trial court could not have engaged in the required Rule 192.3 scope-of-discovery analysis to determine whether the material requested by Beck was reasonably calculated to lead to the discovery of admissible evidence.

We list the following requests to produce propounded by Beck to TIG as examples:

**Request for Production No. 1.** Copies of each policy of insurance issued by Defendant TIG to Beck from 1960 to 1986 including any changes, renewals, or endorsements.

**Request for Production No. 6.** All documents including but not limited to indexes, billing records, account records, policy lists, customer lists, insured lists and/or memorandums that in any way reference and/or provide evidence of the existence of a policy of insurance issued by Defendant TIG to Beck from 1960 to 1986. This includes CGL, workman's comp, primary and excess policies of insurance.

**Request for Production No. 7.** Copies of each policy providing insurance coverage to Beck and issued by carriers other than Defendant TIG from 1960 to 1986 including any changes, renewals, or endorsements.

**Request for Production No. 10.** All manuals, written policies, written guidelines, memorandums and/or written procedures of Defendant TIG written prior to the date that you anticipated litigation with Beck.

**Request for Production No. 11.** All manuals, written policies, written guidelines, memorandums and/or written procedures of Defendant TIG that address asbestos litigation and written prior to the date that you anticipated litigation with Beck.

**Request for Production No. 20.** All agreements that you have to split the costs of defense of any asbestos litigation in Texas with other carriers where such agreement was reached prior to a settlement of the asbestos claim at issue.

**Request for Production No. 22.** All agreements that you have to split the costs of defense of Beck with other carriers in any asbestos litigation outside of Texas.

**Request for Production No. 25.** All communications and/or correspondence between you and Beck regarding the Subject Policy or Policies.

**Request for Production No. 27.** All communications and/or correspondence between you and any other party besides Beck or other carriers regarding the Subject Policy or Policies.

**Request for Production No. 32.** If Defendant TIG contends that it does not owe any duty to defend Beck under the subject Policy or Policies, all documents that Defendant TIG contends supports the contention or allegation that Defendant TIG does not owe Beck a duty to defend in personal injury asbestos claims and lawsuits asserted against Beck under the Subject Policy or Policies. This Request seeks documents that are not claimed to be privileged. If Defendant TIG is withholding documents as privileged, Beck requests that Defendant TIG provide a privilege log.

**Request for Production No. 39.** All documents or correspondence from insureds addressing a rejection of a reservation of rights letter issued by Defendant TIG.

**Request for Production No. 45.** Copies of all lawsuits in which Defendant TIG is a party and which deal with insurance coverage under a CGL primary insurance policy.

**Request for Production No. 48.** Copies of all agreements between Defendant TIG and its insured in which the insured agrees to accept an allocation of the costs of defense based on a "time on the risk" allocation in connection with Texas asbestos litigation.

**Request for Production No. 56.** Copies of any and all requests by a Texas insured tendering an asbestos lawsuit to Defendant TIG and seeking a defense.

**Request for Production No. 71.** Any settlement agreements to which Defendant TIG is a party pertaining to coverage in connection with asbestos litigation.

**Request for Production No. 85.** All reservation of rights letters sent by Defendant TIG in asbestos personal injury cases from 1986 to the present.

**Request for Production No. 97.** All reports, studies, memorandums and similar documents that discuss, address and/or pertain to the average cost for defending an asbestos claim in Texas.

**Request for Production No. 107.** All correspondence with other insurance companies including but not limited to other named Third Party Defendant carriers regarding joint and several duty to defend in asbestos litigation in Texas.

The breadth of these requests was further expanded by the definitions section of the request. For example, the term "you" and "your" was defined to mean "Defendant TIG and/or any agent, partner, employee and/or other representative of Defendant TIG and/or any merged, consolidated, or acquired affiliate, predecessor and/or successor." "The Subject Policy or Policies" was likewise broadly defined to include, among other things, "each and every policy of insurance issued by this Defendant to Beck from 1960 to 1986."

■ Our selection of these requests is intended to demonstrate the nature of the requests served by Beck. Relator TIG argues that discovery request numbers 1–29, 37–57, 59–99, and 102–109 are overly broad because they are not limited to the three year time period asserted to be the period in which TIG issued policies to Beck. TIG asserts that the requests should have been narrowed by the trial court to the type of insurance, a reasonable time period, the relevant location, and to relevant materials that might be admissible as evidence. TIG argues that Judge Sanderson's order requires it to produce every manual, every written guideline, and every written procedure ever generated by TIG between 1911, the date TIG asserts is the date it was founded, and the filing of Beck's suit in March 2004. TIG also argues that the requests would require it to produce every policy of insurance issued by TIG to Beck between 1960 and 1986, whether the policy was relevant to an asbestos claim, or not, and whether or not the policies were related to the underlying asbestos claimants' suits.

We agree the requests to which TIG lodged overly broad objections were facially overly broad. In *Dillard Department Stores, Inc. v. Hall,* the Texas Supreme Court held that a request for Dillard to perform a search for documents covering a five year time period and twenty states was overly broad as a matter of law. 909 S.W.2d at 492. In *Texaco, Inc. v. Sanderson,* 898 S.W.2d at 815, the Supreme Court held that a request for all safety and toxicology documents written by Texaco's safety director during time periods when plaintiffs did not work on the premises was likewise overly broad. In *In re American Optical Corp.,* 988 S.W.2d at 713, an asbestos case, a trial court ruling to turn over every document ever produced relating to asbestos for a fifty year period was ruled impermissibly broad.

The Supreme Court, in *In re CSX Corp.,* 124 S.W.3d at 153, held that an interrogatory requiring that a company identify all safety employees who worked there for a thirty year period was impermissibly broad. The Supreme Court stated, "A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information."

*Id.* As reflected by the Texas Supreme Court rulings on similarly broad requests, the requests propounded by Beck would likewise be held impermissibly broad. Rather than invite the Supreme Court to answer the issue yet again, we agree that these requests violated settled discovery rules because they were overly broad.

We next evaluate whether the requests could have been more narrowly tailored. The requests could have been narrowed to the three year time period during which TIG insured Beck. Although narrowing the requests to a three year period would not have eliminated the requirement that Beck show that TIG's coverage was triggered by an asbestos claim that overlapped TIG's coverage periods for Beck, a date restriction would have largely reduced the problem with the overly broad nature of Beck's requests.

It is possible that the relevant dates might exceed, to a limited degree, the dates that TIG issued policies. Nevertheless, the trial court has a duty to make an effort to impose reasonable discovery limits. *In re American Optical Corp.*, 988 S.W.2d at 713. To the extent that some documents might be relevant beyond the years TIG issued policies, the time limits placed on discovery must be narrowed so the products of such a search are reasonably calculated to lead to admissible evidence. We find Beck's requests could have, and should have been more narrowly tailored.

■ Finally, before a party is required to produce, and after determining the years relevant to the case and controversy, a trial court is required to evaluate whether the documents requested meet TEX.R. CIV. P. 192.3(a)'s scope-of-discovery test. *In re Dana Corp.*, 138 S.W.3d at 301.

> [O]ur rules require that a threshold showing of applicability must be made before a party can be ordered to pro-

duce multiple decades of insurance policies; only those insurance policies 'under which any person may be liable to satisfy part or all of a judgment' are subject to discovery. TEX.R. CIV. P. 192.3(f); *see also In re CSX*, 124 S.W.3d at 152.

*Id.*

■ A scope-of-isomer analysis is not possible without first determining which policy years were actually in issue. Beck did not show the trial court that all three years in which TIG allegedly provided coverage were involved, or provide any evidence to show the time periods at issue in this case. Beck likely could have made the necessary threshold showing by providing pleadings in the underlying cases to demonstrate that the years alleged by the asbestos claimants in the suits overlapped with the years TIG issued policies, or produced other evidence to reflect the time periods involved in the underlying asbestos claims triggered TIG's alleged coverage dates. However, a discovery request for insurance policies during periods for which no asbestos claimants were asserting claims against Beck, or for policies that did not arguably cover the claims, would be overly broad.

■ On this record, there was no evidence showing when the underlying asbestos claimants asserted that Beck exposed them to asbestos. It is the discovery proponent's burden to demonstrate that the requested documents fall within the scope-of-discovery of Rule 192.3. *See In re Dana Corp.*, 138 S.W.3d at 302(holding that because plaintiff failed to establish applicability of policies issued between 1930 and 1945, a discovery order requiring the production of those policies was overly broad).

■ With respect to Requests for Production Numbers 32–36, Beck propounded requests that essentially requested TIG to

produce all documents supporting its contentions justifying its position to deny Beck's claims. TIG objected to these requests on the basis that they were "beyond the scope" of discovery and were "impermissible request[s] that TIG marshal its evidence." However, TIG did not expressly state in its objections that these five requests were "overly broad," "vague," or "ambiguous."

The Supreme Court discussed a similar request to produce in *Loftin v. Martin*, 776 S.W.2d at 148, in which a party requested that a worker's compensation carrier produce all documents that supported its allegations. In *Loftin*, the Supreme Court stated:

> Loftin has requested all evidence that supports Lumbermens' allegations. The request does not identify any particular class or type of documents but it is merely a request that Loftin be allowed to generally peruse all evidence Lumbermens might have. We hold that such request was vague, ambiguous, and overbroad and that the trial court was within its sound discretion in sustaining Lumbermens' objection. No one seeks to deny Loftin's right to see evidence against him, but he must formulate his request for production with a certain degree of specificity to allow Lumbermens to comply.

*Id.* at 148.

■ TEX.R. CIV. P. 196.1(b) provides, "The request [to produce] must specify the items to be produced or inspected, either by individual item or by category, and describe with reasonable particularity each item and category." Beck's Requests to Produce Numbers 32–36 fail to sufficiently specify with reasonable particularity the documents to be produced. Because Beck's requests were not reasonably specific, the requests were improper because they were beyond the scope of discovery of

the rules. The problem created by a trial court's order compelling production of documents in response to a vague request is that the responding party is unlikely to know what documents are required to be produced. TIG's objections to this group of requests on the basis that the requests were beyond the scope of discovery requiring TIG to marshal its evidence was sufficient to place the court on notice of the objectionable nature of these requests. We hold that the trial court erred in overruling TIG's objections to these requests.

■ The burden to propound discovery complying with the rules of discovery should be on the party propounding the discovery, and not on the courts to redraft overly broad discovery so that, as re-drawn by the court, the requests comply with the discovery rules. Additional problems are created by "battlefield surgery" when a court attempts to deal with voluminous requests, many of which suffer from overbreadth. *In re Sears, Roebuck and Co.*, 123 S.W.3d 573, 578(Tex.App.-Houston [14th Dist.] 2003, orig. proceeding). Although we could remand Beck's requests to the trial court and request that the trial court attempt to narrow the requests, where the discovery as drafted by a party involves over 100 requests, many of which are clearly outside the bounds of proper discovery, we decline to transfer the burden of drafting proper discovery from the party that drafted it in the first place and place it on the courts. We believe the better practice under these circumstances is to direct the trial court to enter the ruling that should have been entered at the hearing. *See* TEX.R.APP. P. 52.8(c).

We next address Request to Produce Numbers 30–31, 58, 100–101, and 110–113. TIG did not object that these requests were overly broad, but asserted various other objections.

■ In Request to Produce Number 30, Beck requested TIG's file regarding its decision not to provide Beck a defense in the underlying asbestos suits. The request, as worded, specifically excludes privileged documents, but did request a privilege log in the event that privileged documents were withheld. TIG objected that the request was vague and ambiguous, and subject to the objection, indicated that it would make the documents available. We hold that the trial court acted within its discretion to order TIG to comply with the request.

■ In Request to Produce Number 31, Beck requested that TIG produce all manuals, written policies, written procedures, memorandums and/or written guidelines it reviewed in determining whether or not to provide a defense to Beck in the underlying asbestos suits. The request, as worded, specifically excludes privileged documents, but did request a privilege log in the event that privileged documents were withheld. TIG objected that the request was vague and ambiguous, and subject to the objection, indicated that it would make the documents available. We hold that the trial court acted within its discretion to order TIG to comply with the request.

In Request to Produce Number 58, Beck requested that TIG produce all documents identified and described in its answers to interrogatories. TIG filed no objection, and indicated it would make any responsive documents available. We hold that the trial court acted within its discretion to order TIG to comply with the request.

In Request to Produce Numbers 100 and 101, Beck requested all reports, studies, memoranda, and similar documents that address or pertain to actual or projected costs of defense for Beck in the pending or future asbestos litigation. TIG filed no objection, and indicated it would make any responsive documents available. We hold that the trial court acted within its discretion to order TIG to comply with the request.

■ In Request to Produce Number 110, Beck requested TIG produce all lists of documents relating to or identifying Beck's insurance coverage, whether from TIG or others, for asbestos claims prior to 1986. TIG objected to producing documents that were attorney work product, but that subject to such privilege TIG stated it would produce documents, if any were available, at a reasonable time and place. At the hearing, Beck failed to demonstrate that it complied with Tex.R. Civ. P. 193.3(b), that provides, "After receiving a response indicating that material or information has been withheld from production, the party seeking discovery may serve a written request that the withholding party identify the information and material withheld." Further, Tex.R. Civ. P. 193.2(f) provides:

> A party should not object to a request for written discovery on the grounds that it calls for production of material or information that is privileged but should instead comply with Rule 193.3. A party who objects to production of privileged material or information does not waive the privilege but must comply with Rule 193.3 when the error is pointed out.

Because Beck did not follow the procedure regarding obtaining information potentially subject to the attorney work product privilege, the question of whether a work product privilege existed as to Request to Produce Number 110 was not properly before the trial court. In *Walker v. Packer*, 827 S.W.2d 833 (Tex.1992)(orig.proceeding), with regard to a claim of privilege, the Texas Supreme Court stated:

170

[A] party will not have an adequate remedy by appeal when the appellate court would not be able to cure the trial court's discovery error. This occurs when the trial court erroneously orders the disclosure of privileged information which will materially affect the rights of the aggrieved party, such as documents covered by the attorney-client privilege.... As we noted in *Crane* [*v. Tunks*, 160 Tex. 182, 190, 328 S.W.2d 434, 439 (1959)]: "After the [privileged documents] had been inspected, examined and reproduced ... a holding that the court had erroneously issued the order would be of small comfort to relators in protecting their papers."

*Walker*, 827 S.W.2d at 843 (citations omitted).

Additionally, the Motion to Compel and the notice of the hearing on the Motion to Compel did not indicate that the attorney work product privilege assertions were to be the subject of the Motion to Compel hearing. At the hearing, no party addressed the specific subject of the attorney work product privilege, and the hearing focused on whether TIG was responsible for the objections filed by its former counsel.

The rules of procedure contemplate that the parties will itemize the documents claimed to be privileged, and then produce evidence regarding the documents claimed privileged if, based on the documents withheld, the proponent of the discovery desires to pursue an attempt to obtain the documents. *See generally In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218 (Tex.2004) (orig.proceeding)(demonstrating the procedure followed to itemize privileged documents). It is clear that the procedures outlined by the rules regarding attorney work product privilege were not followed by the parties in this instance.

Under the record presented here, the issue of attorney work product was not properly before the trial court. The parties may choose to proceed pursuant to Rules 193.3 and 193.4 on Request to Produce Number 110 if they desire to do so. *See In re Shipmon*, 68 S.W.3d 815, 822 (Tex.App.-Amarillo, 2001, orig.proceeding). We hold that the trial court erred in overruling the objection to Request to Produce Number 110.

In Request to Produce Number 111, Beck sought to require TIG to produce reports and other tangible documents from any of its consulting experts, if such information has been reviewed by a testifying expert. TIG objected that this request exceeded the parameters of expert discovery under the rules of discovery. We do not agree that TIG was correct in this regard, since information regarding consulting expert discovery is not governed exclusively by TEX.R. CIV. P. 195.1. TIG made no objection pursuant to TEX.R. CIV. P. 192.4(a) that the discovery accomplished by Request to Produce Number 111 would unreasonably duplicate information that would be disclosed regarding consulting experts under TEX.R. CIV. P. 194.2(f)(4)(A), requiring disclosure of all documents and reports provided to any testifying expert. In the absence of any objection other than the one lodged by TIG here, we hold that the trial court acted within its discretion to order TIG to comply with the request.

In Request to Produce Number 112, Beck requested TIG produce all photographs, films, slides, videotapes or other visual reproductions related to the lawsuit. TIG objected that the request invaded the attorney work product doctrine. For the same reasons discussed with respect to Request to Produce Number 110, we hold that the question of whether a work product privilege existed as to Request to Produce Number 112 was not properly before

the trial court, and the parties may choose to proceed, if they desire to do so, pursuant to Rules 193.3 and 193.4.

■ In Request to Produce Number 113, Beck asked TIG to produce all tangible evidence that TIG intended to introduce at trial. TIG objected that the request invaded the attorney work product doctrine and impermissibly required TIG to marshal its evidence. For the same reasons discussed with respect to Request to Produce Numbers 32–36, we hold the request fails to identify the documents with reasonable particularity to comply with Rule 196.1(b). We hold that the trial court erred in overruling TIG's objection under the circumstances presented on this record.

■ In order to show entitlement to mandamus relief, TIG must show that it has no adequate appellate remedy. Having to produce overbroad discovery that is almost unlimited in time, to produce in response to vague requests that are not reasonably specific, or to produce attorney work product as a consequence of a hearing where the attorney work product privilege was not properly before the court would result in time, labor, and money spent on improper production that could not be retrieved. To the extent attorney work product is produced, the information learned by the other party cannot, as a practical matter, be extracted even if the documents are subsequently retrieved. We hold that there is no adequate remedy by appeal from the trial court's order that would require TIG to produce overbroad discovery not sufficiently limited in time, to produce in response to an overly vague request and to produce attorney work product. *See In re CSX Corp.*, 124 S.W.3d at 153; *Crane v. Tunks*, 160 Tex. 182, 190, 328 S.W.2d 434, 439 (1959).

Finally, TIG complains that the trial court abused its discretion in ordering that TIG pay $10,000 in attorney's fees within ten days of the signing of the order on the motion to compel. TIG requests that we vacate the award, or that we abate the award until the entry of a final judgment. The argument centers on the fact that its former trial attorney failed t get express approval from TIG to file objections, and therefore, TIG argues, discovery sanctions should not be imposed upon TIG for any problems that might have been created by its former trial counsel's responses to discovery filed on its behalf.

■ The $10,000 sanction award, made payable within ten days, would generally not be reviewed on mandamus because TIG has an adequate remedy by appeal. Tex.R. Civ. P. 215.3 provides, in pertinent part, "Such order of sanction shall be subject to review on appeal from the final judgment." *See also Braden v. Downey*, 811 S.W.2d 922, 929 (Tex.1991)(orig.proceeding) (mandamus is proper for review of a sanction only when it terminates or inhibits the presentation of the merits of a party's claims). However, where sanctions are imposed, the trial court should delay the payment of sanctions until the termination of the lawsuit, or make a written finding that the payment of sanctions would not obstruct the ability of the party being sanctioned to defend the suit. *Braden*, 811 S.W.2d at 929 (citations omitted); *In re Lavernia Nursing Facility, Inc.*, 12 S.W.3d 566, 572(Tex.App.-San Antonio 1999, orig proceeding)($10,000 sanction payable prior to conclusions remanded for necessary finding that sanction would not preclude defendant's ability to defend case). No written findings regarding the fact that the award would not obstruct TIG's ability to defend were made by the trial court, nor can we determine whether the sanctioned conduct was related to the rulings of the trial court that we have sustained.

Since the trial court did not make the requisite finding, we remand the issue involving the sanction award to the trial court to give it an opportunity to modify its order in accordance with *Braden.* The trial court is not prohibited from revisiting the issue of whether discovery sanctions are justified with the benefit of the hindsight of this proceeding.

In summary, we hold that discovery request numbers 1–29, 32–57, 59–99, 102–109, and 113 were overly broad because they are not appropriately limited in time and subject matter, or did not put the defendant on notice of the document to be produced with reasonable specificity, or were not shown to be within the scope-of-discovery as it relates to the case and controversy. Accordingly, we conditionally grant mandamus relief, and direct the trial judge to vacate his June 3, 2005 order pertaining to Requests to Produce Numbers 1–29, 32–57, 59–99, 102–109 and 113, and enter an order sustaining TIG's objections to these requests. Our ruling does not prohibit Beck from propounding requests for production properly tailored to the case, should it choose to do so.

We further hold that with respect to discovery request numbers 110 and 112, the issue of whether privileged work product documents were requested was not before the trial court under the circumstances of this record. Accordingly, we conditionally grant mandamus relief, and direct the trial judge to vacate his June 3, 2005 order pertaining to request numbers 110 and 112. The parties may choose to proceed regarding these requests pursuant to Tex.R. Civ. P. 193.3 and 193.4.

We further hold the trial court did not abuse its discretion when it ordered the production of documents in response to discover request numbers 30–31, 58, 100–101, and 111. We deny the petition for writ of mandamus with respect to this portion of the trial court's order.

Finally, we decline to vacate the trial court's order granting $10,000 in attorney's fees to Beck at this time, but remand the sanctions award to the trial court to review our rulings in this opinion. However, in any event, the trial court should have delayed the payment of sanctions until the termination of the lawsuit, or made a written finding that the payment of sanctions would not obstruct TIG's ability to defend the lawsuit. We conditionally grant the petition in part to allow the trial court to modify its order within twenty days of the date of this opinion.

With respect to the relief granted herein, the writ will issue only if the trial court fails to act promptly in accord with this opinion.

WRIT DENIED IN PART; CONDITIONALLY GRANTED IN PART.