**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00146-CV**
_____

**IN RE SKYHAWK SECURITY, LLC**

**Original Proceeding**
**284th District Court of Montgomery County, Texas**
**Trial Cause No. 18-08-10598-CV**

**MEMORANDUM OPINION**

Relator Skyhawk Security, LLC ("Skyhawk") filed a petition for writ of mandamus, in which it asks this Court to compel the trial court to vacate its order compelling discovery and to grant its motion for protection. Skyhawk, a non-party in the underlying lawsuit, argues that the trial court abused its discretion by ordering it to comply with overly broad and unduly burdensome discovery requests and to produce confidential trade secret information to its competitor with no showing that the protection of Skyhawk's trade secrets would prevent a fair adjudication of the underlying lawsuit. The real party in interest, Shrink Stoppers, LLC D/B/A ASAP Security Services, LLC ("ASAP"), maintains that Skyhawk failed to establish that

1

the trade secret privilege applies or that the subpoena was overbroad or unduly burdensome. For the reasons explained below, we conditionally grant the petition in part and deny the petition in part.

## BACKGROUND

In the underlying lawsuit, Cause No. 18-08-10598, *Shrink Stoppers, LLC D/B/A ASAP Security Services, LLC v. Casey R. McAdams, individually, and Emergency Power Off Systems Designs, LLC, and Michael Monsive, individually*, ASAP sued McAdams for allegedly soliciting ASAP's existing customers in violation of a pre-litigation negotiated Settlement Agreement (the "Settlement Agreement"), in which McAdams reaffirmed his Confidentiality, Non-Solicitation, and Non-Competition Addendum (the "Employment Agreement") with ASAP. ASAP sought injunctive relief, requesting that the trial court prevent McAdams and Emergency Power Off Systems Designs, LLC ("EPOSD") from divulging, using, or disclosing any of ASAP's confidential and proprietary information, and preventing McAdams from performing any sales activities and account management related to commercial low voltage projects in sixty-five Texas counties and from soliciting ASAP's employees. McAdams filed a counterclaim against ASAP, arguing that ASAP never entrusted him with any trade secrets and that he was not aware that ASAP has any trade secrets.

According to ASAP, the Employment Agreement restricted McAdams from using and/or disclosing ASAP's confidential information, trade secrets, and proprietary information; being employed by or doing business with a competitor for a period following separation of employment; and from soliciting ASAP's employees and agents. ASAP maintained that in July 2018, its President and Chief Executive Officer, Michael Monsive, became aware that McAdams had breached the Employment Agreement, and ASAP sent McAdams and other related parties cease and desist letters. ASAP and McAdams reached a Settlement Agreement defining the scope of McAdams's non-compete agreement, in which McAdams agreed to refrain from engaging in sales activities or account management for commercial low voltage projects within a restricted area consisting of sixty-five counties. According to ASAP, in August 2018, McAdams began providing services to EPOSD as its consulting manager. A customer representative of one of ASAP's key commercial low voltage customers informed Monsive that McAdams had tried to secure his business for low voltage projects by recommending that the customer representative use EPOSD's services. ASAP maintained that McAdams admitted in his deposition to performing sales activities on behalf of EPOSD when he communicated with ASAP's customer, and that McAdams intended to help EPOSD build its business by using ASAP's confidential information, which included ASAP's customer contact information and templates for bid proposals.

ASAP filed suit against McAdams for allegedly violating the Settlement Agreement and using ASAP's confidential information by engaging in sales activities or account management for commercial low voltage projects in the restricted areas, and the trial court entered an agreed temporary injunction, in which McAdams agreed to desist and refrain from "directly or indirectly performing Commercial Low Voltage Project sales activities and/or management of Commercial Low Voltage Project accounts" in eight Texas counties. ASAP alleged that EPOSD and Skyhawk, McAdams's current employer, were aware of McAdams's agreements with ASAP, have tortiously interfered with those agreements, and have used ASAP's confidential and proprietary information for their advantage. ASAP maintained that after deposing McAdams, it discovered that during his employment with Skyhawk, McAdams engaged in self-regulated solicitation of ASAP's customers and then forwarded the opportunities to other Skyhawk employees to pursue the leads. According to ASAP, it joined EPOSD to the underlying lawsuit, because EPOSD was one of its customers that McAdams allegedly solicited, and EPOSD and Skyhawk provided similar services as ASAP and overlap in the low voltage arena.

ASAP also contends that after McAdams resigned from ASAP, McAdams kept a spreadsheet containing ASAP's customer information, and McAdams created and continues to use a customer proposal template that is very similar, if not

4

identical, to ASAP's proposal. ASAP maintains that it sought discovery from non-party Skyhawk due to McAdams's restricted activity during his employment with Skyhawk, and that it requested specific information regarding McAdams's sales and management activities in relation to commercial low voltage projects, which ASAP argues is necessary information to prosecute its claims against McAdams. *See generally* Tex. R. Civ. P. 205.1. ASAP's subpoena served on the non-party Skyhawk requested the following:

> 1.    All agreements or contracts between McAdams and Skyhawk, including but not limited to any employment agreements, independent contractor agreements, master services agreements, consulting agreements, referral fee agreements, commission and/or compensation agreements, confidentiality agreements, and/or nondisclosure agreements.
>
> 2.    All documents, communications, and correspondence reflecting, demonstrating, and/or related to the work performed by McAdams, or work in which McAdams participated or currently participates, on behalf of Skyhawk relating to Commercial Low Voltage Projects, in any capacity, whether as an employee, contractor, consultant, or otherwise, including but not limited to solicitation of Commercial Low Voltage work, management of accounts or projects, and training of other Skyhawk employees or contractors.
>
> 3.    All quotes, proposals and/or contracts for Commercial Low Voltage Projects prepared by McAdams on behalf of Skyhawk, and proposals and/or quotes for Commercial Low Voltage Projects on which McAdams provided or currently provides consulting, management, training, or other direct services, not already produced in response to Request No. 2 above.
>
> 4.    All documents, communications, and correspondence reflecting the locations of Commercial Low Voltage Projects on which McAdams has provided or currently provides any services or work on behalf of

5

Skyhawk, including services or work directly with customers and clients, management of accounts or projects, and training of other Skyhawk employees or contractors, not already produced in response to Request No. 2 or No. 3 above.

5.      All documents, communications, and correspondence reflecting, demonstrating, and/or related to any software programs, industry subscription or membership services, or other vendors utilized by McAdams to solicit business or otherwise gain information regarding upcoming Commercial Low Voltage Projects on behalf of Skyhawk, not already produced in response to Request No. 2 above.

6.      McAdams's EPOSD personnel file, including but not limited to offer letters or pre-employment agreements.[1]

7.      All records of payments made by Skyhawk to McAdams since June 25, 2018.[2]

8.      All communications and correspondence between Skyhawk and McAdams from June 25, 2018 to the present date relating to or concerning Commercial Low Voltage Projects, not already produced in response to Request No. 2, No. 3, No. 4, or No. 5 above.

9.      All communications and correspondence between Skyhawk and McAdams relating to or referencing ASAP and/or Monsive.

10.     All communications and correspondence between Skyhawk and McAdams relating to or referencing EPOSD.

11.     All documents reflecting, related to, or regarding any information provided by McAdams to Skyhawk including or containing any reference to ASAP.

---

[1]The trial court did not compel Skyhawk to produce information responsive to Request No. 6.

[2]The trial court did not compel Skyhawk to produce information responsive to Request No. 7.

12.    All documents reflecting, relating to, or regarding any information provided by McAdams to Skyhawk including or containing any reference to EPOSD.

13.    All documents reflecting, related to, or regarding any information provided by McAdams to Skyhawk containing or related to ASAP's Confidential Information.

14.    All communications and correspondence between McAdams and EPOSD customers and potential Skyhawk customers regarding Commercial Low Voltage Projects from June 25, 2018 to the present date, not already produced in response to Request No. 2 or No. 3 above.

In response to ASAP's subpoena, Skyhawk filed objections and a Motion for Protective Order, arguing that the subpoena sought to compel Skyhawk's proprietary and confidential information, that the requests sought information that is unrelated to the underlying matter, and that the requests were overly broad and unduly burdensome. In its motion, Skyhawk argued it is not a party in the underlying lawsuit and that the relevant discovery requests could be obtained directly from McAdams. Skyhawk attached the affidavit of one of its owners, Paul Ellis, who averred that McAdams had not directly or indirectly performed any work in the restricted areas set forth in the underlying Agreed Temporary Injunction, and that McAdams had not shared any trade secrets or confidential information regarding ASAP with anyone at Skyhawk. Ellis further averred that ASAP's requests concerning McAdams's work with Skyhawk are not limited to the restricted areas in Texas, and that to compile documents concerning McAdams's work from non-restricted areas would be

7

extremely time consuming and difficult and would demonstrate nothing related to the restricted areas.

ASAP filed a motion to compel Skyhawk to respond to its subpoena seeking production of requested discovery documents that it argued contained facts concerning McAdams's job duties and responsibilities with Skyhawk that are specifically restricted to commercial low voltage projects. According to ASAP, the requested documents are germane to the issue of its claims that McAdams has violated the Settlement Agreement and Temporary Injunction and utilized ASAP's proprietary information. ASAP attached excerpts from McAdams's deposition and argued that McAdams's sworn admissions during his testimony show that McAdams continues to engage in actions on behalf of Skyhawk that are in breach of the Settlement Agreement and Temporary Injunction. ASAP further argued that even assuming the requests seek documents that contain Skyhawk's trade secrets, Skyhawk is not entitled to protection under the trade secret privilege because the information is necessary for a fair adjudication of ASAP's claims against McAdams. According to ASAP, Skyhawk has made conclusory statements that the requests are burdensome, and Skyhawk neither included a cost estimate of its expense in producing the requested documents nor attempted to reach an agreement concerning the range of production. ASAP requested that the trial court order Skyhawk to

produce the responsive documents and submit a cost report for its reasonable expenses in doing so.

In its response to ASAP's motion to compel, Skyhawk argued that it was entitled to protection from ASAP's discovery requests, because the requests seek documents containing Skyhawk's confidential, proprietary information and encompass matters that are not relevant to the underlying lawsuit. Skyhawk also asserted that the subpoena was overly broad, and that its evidence showed that McAdams had not performed any low voltage sales activities or work in the eight counties specified in the Agreed Temporary Injunction. Skyhawk maintained that during his employment with Skyhawk, McAdams has not used or divulged any of ASAP's information.

The trial court denied Skyhawk's motion for protection and granted ASAP's motion to compel, ordering Skyhawk to produce all non-privileged documents responsive to Skyhawk's subpoena excluding request numbers six and seven. After Skyhawk's and ASAP's negotiations concerning the scope of the trial court's order compelling discovery failed, the trial court granted Skyhawk's emergency motion to stay the trial court's orders granting ASAP's motion to compel and denying Skyhawk's motion for a protective order pending resolution of Skyhawk's request for relief from this Court. Skyhawk initially filed a notice of appeal challenging the trial court's orders, but Skyhawk later filed a letter brief requesting that this Court

treat its motion for emergency relief as a petition for writ of mandamus if the Court determines that a direct appeal is not the appropriate vehicle for challenging the trial court's orders. After receiving additional briefing from the parties regarding this Court's jurisdiction, ASAP asserted for the first time that Skyhawk is a potential targeted defendant in the underlying lawsuit, and the parties agreed that Skyhawk's appeal should be treated as a mandamus proceeding. Accordingly, Skyhawk filed an amended petition for writ of mandamus complaining that the trial court refused to protect its proprietary trade secrets and that ASAP's requests were overbroad and unduly burdensome and absent mandamus relief, as a non-party, Skyhawk has no opportunity for appellate review.

## ANALYSIS

Generally, the scope of discovery is within the trial court's discretion. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding). Mandamus will issue to correct a discovery order if there is a clear abuse of discretion and there is no adequate remedy at law. *Id.* A trial court abuses its discretion when its ruling is so arbitrary and unreasonable that it constitutes a clear and prejudicial error of law. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding). A trial court has no discretion in determining what the law is or applying the law to the facts. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). "Mandamus relief is available when the trial court compels production beyond the

permissible bounds of discovery." *In re Weekley Homes, L.P.*, 295 S.W.3d 309, 322 (Tex. 2009) (orig. proceeding). "If an appellate court cannot remedy a trial court's discovery error, then an adequate appellate remedy does not exist." *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex. 2004) (orig. proceeding). Mandamus relief may be justified when an appellate court would not be able to cure the trial court's discovery order, such as when privileged information or trade secrets would be revealed or when production of patently irrelevant documents imposes a disproportionate burden on the producing party. *In re Colonial Pipeline Co.*, 968 S.W.2d at 941.

Skyhawk complains that the trial court abused its discretion by compelling it to respond to discovery requests that were overly broad. According to Skyhawk, the discovery order compelling production of its trade secrets contains no geographical limitations and seeks documents unrelated to McAdams's restrictions or ASAP's customers. ASAP argues that the subpoena is not overbroad because it is limited to commercial low voltage projects and requests information regarding all of McAdams's customer proposals and solicitations during his employment with Skyhawk, which is less than two years. According to ASAP, information concerning McAdams's activities outside of the restricted areas is relevant to whether McAdams has continued to utilize ASAP's proposals and to solicit and forward customer opportunities to Skyhawk.

11

Rule 205.1 of the Texas Rules of Civil Procedure authorizes a party to compel discovery from a non-party by serving a subpoena compelling a request for production of documents. Tex. R. Civ. P. 205.1(d). The Texas Rules of Civil Procedure provide for discovery of "any matter that is not privileged and is relevant to the subject matter of the pending action[.]" Tex. R. Civ. P. 192.3(a). However, "discovery requests must be reasonably tailored to include only matters relevant to the case." *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 180 (Tex. 1999) (orig. proceeding). Discovery may not be used as a fishing expedition. *See K Mart Corp. v. Sanderson*, 937 S.W.2d 429, 431 (Tex. 1996); *Loftin v. Martin*, 776 S.W.2d 145, 148 (Tex. 1989).

"The trial court abuses its discretion by ordering discovery that exceeds that permitted by the rules of procedure." *In re CSX Corp.*, 124 S.W.3d at 152. The Texas Rules of Civil Procedure allow a discovery request that has a reasonable expectation of obtaining information that will aid in resolution of the dispute. *See id.* However, discovery requests must not be overbroad. *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding). "Overbroad requests for irrelevant information are improper whether they are burdensome or not[.]" *In re Allstate Cty. Mut. Ins. Co.*, 227 S.W.3d 667, 670 (Tex. 2007) (orig. proceeding). Limits on time and location will not render irrelevant information discoverable. *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d at 489-90. Discovery orders requiring document production

12

from an unreasonably long time or from distant and unrelated locales are impermissibly overbroad. *See In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998). "A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information." *Id.*

We agree with Skyhawk's contention that some of ASAP's requests for documents are overly broad. Skyhawk specifically complains that requests for production numbers two, three, four, five, and eight are clearly not limited to McAdams's restrictions and are unrelated to the underlying litigation involving McAdams's work for EPOSD. ASAP's requests are overly broad on their face and are not reasonably tailored and limited to information pertinent to the restrictions and geographical region as outlined in the temporary injunction and include an overly broad scope of "all documents, communications, and correspondence," as well as "all quotes, proposals and/or contracts for Commercial Low Voltage Projects prepared by McAdams on behalf of Skyhawk[.]" Although ASAP's underlying suit alleges that McAdams continues to use ASAP's confidential and proprietary information, including its customer information and customer proposal template, ASAP's requests seek information regarding all of McAdams's work on commercial low voltage projects outside the restricted areas and that do not involve ASAP's customers.

We conclude that the trial court abused its discretion by granting ASAP's motion to compel and ordering Skyhawk, a non-party, to comply with the discovery requests because they were not narrowly tailored to obtain relevant information. *See* Tex. R. Civ. P. 192.3; *In re CSX Corp.*, 124 S.W.3d at 153; *In re Am. Optical Corp.*, 988 S.W.2d at 713; *see also* Tex. R. Civ. P. 205.1. "The burden to propound discovery complying with the rules of discovery should be on the party propounding the discovery, and not on the courts to redraft overly broad discovery so that, as re-drawn by the court, the requests comply with the discovery rules." *In re TIG Ins. Co.*, 172 S.W.3d 160, 168 (Tex. App.—Beaumont 2005, orig. proceeding). When the trial court has allowed overly broad discovery, we direct the trial court to enter the ruling that should have been entered. *Id.*

Having concluded that the trial court abused its discretion by ordering Skyhawk to comply with discovery requests that were overly broad and not narrowly tailored to obtain relevant information, we need not address Skyhawk's argument that the trial court abused its discretion by refusing to protect its proprietary trade secrets and by ordering it to produce its solicitations lists, customer lists, account information, proposals, proposal templates, bidding strategies, pricing information, and marketing strategies, all of which are subject to the trade secret privilege. Although we will not decide whether Skyhawk met its burden to show that the requested items are trade secrets and that the trade secret privilege applies, we note

14

that ASAP is requesting that Skyhawk produce the same type of information that ASAP claims in its First Amended Original Petition is ASAP's trade secrets and is confidential and proprietary information.

In his affidavit, Ellis averred that ASAP's requests required it to produce documents containing Skyhawk's trade secrets and confidential and proprietary information regarding its business methods, pricing, customer lists, sales data, and other confidential information that is not relevant to the geographical restrictions imposed upon McAdams. Items such as customer lists, pricing information, client information, and buyer contacts have been shown to be trade secrets, and when an effort is made to keep material important to a particular business from competitors, trade secret protection is warranted. *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 22 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd); *see* Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6) (defining trade secret to include a list of actual or potential customers). The trial court ordered Skyhawk to produce to ASAP the same type of information that ASAP claims are trade secrets and confidential and proprietary information and that by definition are trade secrets, and despite Skyhawk's request, the trial court failed to issue a protective order to safeguard non-party Skyhawk's trade secrets. *See* Tex. Civ. Prac. & Rem. Code Ann. § 134A.002(6); *T-N-T Motorsports, Inc.*, 965 S.W.2d at 22. Importantly, we note

15

that Rule 507 of the Texas Rules of Evidence requires a trial court to take protective measures when it orders the disclosure of a trade secret. Tex. R. Evid. 507(c).

Because we have concluded that the trial court abused its discretion by requiring Skyhawk to comply with discovery requests that were overly broad and not narrowly tailored to obtain relevant information, Skyhawk has shown that it is entitled to the relief sought. *See* Tex. R. App. P. 52.8. We conditionally grant the petition for writ of mandamus. We are confident the trial court will vacate its order granting ASAP's motion to compel. A writ of mandamus will issue only in the event the trial court fails to comply. All other requested mandamus relief is denied.

PETITION CONDITIONALLY GRANTED IN PART; PETITION DENIED IN PART.

PER CURIAM

Submitted on August 21, 2020
Opinion Delivered February 4, 2021

Before Golemon, C.J., Horton and Johnson, JJ.