# Supreme Court of Texas

═══════

No. 20-0268

═══════

In re Kuraray America, Inc.,

*Relator*

════════════════════

On Petition for Writ of Mandamus

════════════════════

**PER CURIAM**

In this mandamus action arising out of a chemical release at a plant, the trial court ordered Relator Kuraray America, Inc., the defendant below, to produce cell-phone data from the employer-issued phones of five employees. Two of the five employees are supervisors—for them, the trial court ordered production of cell-phone data for the six-week period before the chemical release. As to the remaining three employees—control-room board operators who reported to the two supervisors—the trial court ordered production of cell-phone data for the four-month period before the release. Relator challenges the trial court's orders regarding production of all five employees' cell-phone data on the ground the orders require production of information as to which relevance has not been established and thus are impermissibly overbroad. We agree and conditionally grant the writ.

Kuraray operates an ethylene vinyl-alcohol copolymer plant in Pasadena. In May 2018, a chemical reactor became over-pressurized and released ethylene vapor that caught on fire, resulting in multiple injuries and lawsuits. The lawsuits were transferred to a multidistrict litigation pretrial court for consolidated pretrial proceedings. *See* TEX. GOV'T CODE § 74.162 (authorizing transfer of cases involving common questions of fact for consolidated pretrial proceedings).

The ethylene release occurred during a plant turnaround—a scheduled stoppage of operations for maintenance and equipment replacement—that began in early April 2018 and lasted many weeks. About six weeks into the turnaround, between 12:53 a.m. and 7:00 a.m. on May 19, 2018, the temperature inside one of the plant's reactors, the R-1201, dropped unexpectedly, causing the ethylene inside to condense from a gas to a liquid. When the reactor's temperature rose again, its internal pressure rose rapidly. A high-pressure alarm went off at 8:51 a.m. in the control room where two Kuraray board operators were monitoring the R-1201 and other reactors. Nine minutes later, around 9:00 a.m., a second alarm, known as the "Hi Hi alarm," activated and continued sounding every ten minutes. Within a few minutes after the first alarm sounded, the board operator monitoring the R-1201 opened a pressure control valve in an attempt to stabilize the reactor's pressure and then opened it more after the Hi Hi alarm was first activated. The same board operator testified that he continued to respond to the alarms, but he did not realize the R-1201 was as close as it was to its maximum allowable pressure because he did not know that the R-1201's maximum was lower than that of the other reactors. The pressure in

2

the R-1201 caused a rupture disk to burst at 10:28 a.m., releasing ethylene vapor that ignited and injured several nearby workers.

The five employees whose cell-phone data is in dispute had different roles and levels of involvement in monitoring the R-1201 in the hours before the ethylene release:

- Jeremy Neal was the board operator monitoring the R-1201 from 5:30 p.m. on May 18 until his shift ended at 5:30 a.m. on May 19. Neal was thus on overnight duty when the R-1201's internal temperature began dropping, but his shift ended hours before the alarms activated.

- Troy Moorer was the board operator monitoring the R-1201 from 5:30 a.m. until about 10:00 a.m., when he was tasked with monitoring another reactor.

- Joe Jones, also a board operator, was initially monitoring other reactors that morning but was tasked with monitoring the R-1201 at around 10:00 a.m. when a supervisor instructed Jones to take over the R-1201 from Moorer.

- Joe Zoller, a supervisor and former board operator, was "in and out" of the control room that morning but was continuously present and "watching" the board operators starting at around 10:00 a.m.

- Mike Bowlin was the board operators' direct supervisor but was not present in the control room on May 19.

Plaintiffs asserted claims against Kuraray for negligence and gross negligence, but they did not allege that cell-phone use by any Kuraray employee constituted negligence or was a cause of the release. For its part, Kuraray collected the company-issued cell phones of several employees, including those working in the control room at the time of the release, and copied the cell-phone data. Plaintiffs sought production of "all information collected from all phones post incident," with no time limitation. Kuraray initially offered to produce text messages and

3

photographs concerning the release from the phones of several employees who had some connection to the operations in the control room or may have been present in the control room that morning.

Instead, two separate groups of plaintiffs moved to compel the production of all information collected from the cell phones. In their motions, Plaintiffs asserted that this information is relevant because a potential cause of the release was "cell phone usage and abuse by board operators." Plaintiffs also asserted that evidence "pertaining to the activities of Kuraray's employees during the startup of the line in question, the night before the incident, the day of the incident, and the incident itself, is highly relevant." In support of their motions, Plaintiffs presented Zoller's deposition testimony to the effect that, in the months before the release, Kuraray occasionally had a problem with employee cell-phone use in the control room. Plaintiffs also presented deposition testimony from Moorer that Kuraray had a policy prohibiting cell phones in the control room, although Moorer later clarified that Kuraray's policy prohibited "abuse" of cell phones. In response, Kuraray argued, among other things, that the information sought was not relevant and therefore was not discoverable under Texas Rule of Civil Procedure 192.3.

At a hearing, Plaintiffs argued that the cell-phone information was needed to determine whether employees in the control room might have been distracted by their phones when they should have been alerted to changing plant conditions that led to the release. In addition to the deposition testimony referenced in their motions, Plaintiffs

4

presented a January 23, 2018 email from an unknown sender[1] to various Kuraray supervisors expressing concerns about "cell phone abuse" by board operators. During the hearing, Kuraray agreed to produce information regarding cell-phone activity by the board operators starting at 5:30 p.m. the night before the release. The trial court instead ordered Kuraray to produce cell-phone usage data for the board operators going back to January 23, the date of the anonymous email regarding "cell phone abuse." The court further ordered Kuraray to produce cell-phone data for Zoller and Bowlin, the two supervisors, going back to April 6, the date on which Kuraray started the turnaround.

Kuraray moved for reconsideration. It asserted that its analysis demonstrated that cell-phone use was not a contributing cause of the release. In particular, Kuraray contends the data show that none of the five employees was using a cell phone at a time when he should have been responding to the R-1201 alarms or other warning signs. According to Kuraray, the lack of any showing of a causal connection between cell-phone use and the release makes the cell-phone data irrelevant, rendering the trial court's orders for production overbroad and beyond the permissible scope of discovery.

Plaintiffs responded by reiterating that they were entitled to the cell-phone data because they had demonstrated that Kuraray had a history of issues with cell-phone abuse and distracted board operators. The trial court denied reconsideration. Further disputes regarding the

---

[1] The January 23 email was referenced during some of the depositions and at the hearing on Plaintiffs' motion to compel, but it appears from the discussion that the email does not identify its sender. The email itself is not in the mandamus record.

scope of the order resulted in a third order detailing how the data should be produced for each of the five employees. Kuraray seeks mandamus relief from these orders.[2]

"A discovery order that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy." *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014). Rule 192.3 limits discovery to matters that are "relevant to the subject matter of the pending action." TEX. R. CIV. P. 192.3(a). While trial courts enjoy discretion in determining what is "relevant to the subject matter," that discretion is not unlimited. *See In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 223 (Tex. 2016) ("What is 'relevant to the subject matter' is to be broadly construed. These liberal bounds, however, have limits, and 'discovery requests must not be overbroad.'" (citation omitted) (quoting *In re Nat'l Lloyds*, 449 S.W.3d at 488)). A discovery request is impermissibly overbroad if it is not "reasonably tailored to include only matters relevant to the case." *Id.* at 223-24 (quoting *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995)). It is the burden of the party seeking discovery to demonstrate that the requested documents are relevant and therefore discoverable under Rule 192.3. *In re TIG Ins. Co.*, 172 S.W.3d 160, 167 (Tex. App.—Beaumont 2005, orig. proceeding); *see In re Dana Corp.*, 138 S.W.3d 298, 302 (Tex. 2004) (concluding that

---

[2] The challenged orders were issued by Judge Daryl Moore of the 333rd District Court, who was appointed as the pretrial judge by the multidistrict litigation panel. After Kuraray filed its mandamus petition, Judge Moore left the bench, and the MDL panel assigned Judge Lauren Reeder of the 234th District Court as the pretrial judge. We abated the case to allow Judge Reeder to reconsider the challenged orders, *see* TEX. R. APP. P. 7.2(b), but she declined.

6

a discovery request seeking insurance policies that predated plaintiffs' exposure to asbestos was overly broad because plaintiffs failed to establish the potential applicability of those policies to the lawsuit). Where a discovery order compels production of "patently irrelevant or duplicative documents," there is no adequate remedy by appeal because the order "imposes a burden on the producing party far out of proportion to any benefit that may obtain to the requesting party." *In re CSX Corp.*, 124 S.W.3d 149, 153 (Tex. 2003) (quoting *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992)).

Quite unsurprisingly, discovery requests for cell-phone data have become commonplace in recent years. While our Court has not yet had occasion to apply the legal principles governing discovery in this context, our courts of appeals have grappled with the issue. From these cases, we glean some key principles that should guide trial courts' careful management of cell-phone-data discovery. First, to be entitled to production of cell-phone data, the party seeking it must allege or provide some evidence of cell-phone use by the person whose data is sought at a time when it could have been a contributing cause of the incident on which the claim is based. If the party seeking the discovery satisfies this initial burden, the trial court may order production of cell-phone data, provided its temporal scope is tailored to encompass only the period in which cell-phone use could have contributed to the incident.[3] In other words, a trial court may not, at this stage, order production of

---

[3] A trial court ordering production of cell-phone data should of course also consider any objections by the producing party concerning the type or subject-matter of the data requested, as well as any valid privacy, confidentiality, or proportionality objections.

a person's cell-phone data for a time at which his use of a cell phone could not have been a contributing cause of the incident. Only if this initial production indicates that cell-phone use could have contributed to the incident may a trial court consider whether additional discovery regarding cell-phone use beyond that timeframe may be relevant.

Our courts of appeals have correctly granted mandamus relief where trial courts ordered production of cell-phone data (1) without a basis for concluding that cell-phone use may have contributed to the incident on which the claim is based or (2) for a time period broader than the time during which cell-phone use could reasonably be found to have been a contributing cause of the incident. For example, in *In re Padilla*, the Austin Court of Appeals granted mandamus relief when a trial court ordered production of a driver's cell-phone records for fourteen days before and fourteen days after a car accident. No. 03-18-00477-CV, 2018 WL 4087733, at *2 (Tex. App.—Austin Aug. 28, 2018, orig. proceeding). The plaintiff initially sought the defendant driver's cell-phone records for the period encompassing thirty days before and thirty days after the accident. *Id.* at *1. The defendants, for their part, agreed to produce the driver's cell-phone records for the period one hour before and one hour after the accident. *Id.* The trial court split the proverbial baby, ordering production of cell-phone records for the period fourteen days before the accident and fourteen days after. *Id.* Much like in this case, the plaintiff in *Padilla* argued the temporal scope of discovery should not be limited to a narrow window immediately surrounding the accident because she sought to show not only that the driver's cell-phone use might have caused the accident but also that the driver's employer

8

negligently failed to train its drivers or to create and enforce a policy prohibiting cell-phone use while driving. *Id.* at *2. The court of appeals disagreed, explaining that the plaintiff did not plead that cell-phone use caused the accident, the plaintiff's claimed right to cell-phone records "presuppose[s] and depend[s] on the use of the cell-phone by [the driver] at or near the time of the incident," and the plaintiff's request "seeks information well beyond that timeline and scope." *Id.* Accordingly, it directed the trial court to vacate its order requiring production of the phone records. *Id.*

More recently, the Tyler Court of Appeals granted mandamus relief when a trial court ordered production of a truck driver's cell phone for inspection and examination. *In re UV Logistics, LLC*, No. 12-20-00196-CV, 2021 WL 306205, at *1 (Tex. App.—Tyler Jan. 29, 2021, orig. proceeding). The plaintiff alleged that the defendant was distracted by his cell phone and presented a witness affidavit attesting the truck driver said he was looking at his phone at the time of the accident. *Id.* at *1, *4. The plaintiff argued she was entitled to inspect the cell phone to prove both whether the truck driver was using it at the time of the accident and whether he regularly used it while driving. *Id.* at *4. While the court of appeals acknowledged that the plaintiff demonstrated a "reasonable need" for this information, *id.*, it granted mandamus relief and vacated the order, concluding the trial court abused its discretion by ordering production without limitation. *Id.* at *5.

Applying these same principles here, we conclude that the trial court abused its discretion by ordering production of Kuraray's employees' cell-phone data for a six-week or four-month period without

a showing that each employee's use of his cell phone on May 18 or 19 could have been a contributing cause of the ethylene release. Plaintiffs' petitions do not allege that cell-phone use by anyone was a contributing cause of the release. Instead, they assert in their motions to compel the general proposition that the release may have been caused by "cell phone usage and abuse by board operators." Relying on this assertion, the trial court ordered Kuraray to produce four months of cell-phone data for the three board operators and six weeks for the supervisors. This was impermissibly overbroad.

The question that discovery of cell-phone data is meant to answer in this case is whether any Kuraray employee was distracted by his cell phone at a time when he should have been taking action to prevent the release, such that his use of the cell phone reasonably could be found to be a contributing cause of the release. Plaintiffs do not dispute that the events to which they allege the employees should have been responding began, at the earliest, during the May 18 night shift, which started at 5:30 p.m. And Kuraray does not dispute that Plaintiffs are entitled to discover the board operators' cell-phone data during on-duty hours from the start of that shift until the release occurred—approximately seventeen hours later. But the trial court instead ordered Kuraray to produce cell-phone data for far broader time periods: either four months preceding the release (in the case of the three board operators) or six weeks preceding the release (in the case of the two supervisors).

Plaintiffs argue that cell-phone data from days, weeks, and months before the release is relevant because Kuraray negligently failed to supervise its employees and failed to implement adequate policies and

10

procedures to protect against cell-phone misuse.  But Kuraray's policies regarding cell-phone use and its alleged failure to supervise its employees are relevant only if there is some evidence that cell-phone use could have been a contributing cause of the release itself.  In the absence of such a showing, the employees' earlier cell-phone usage, like Kuraray's cell-phone policies and success or failure in enforcing them, is neither relevant nor discoverable.

The record shows the extent of each of the five employees' cell-phone use during the seventeen hours in which cell-phone distraction at work could potentially have made a difference in how events unfolded on May 19.  The trial court should not have ordered production of cell-phone data outside this time period for any of the employees without first undertaking a person-by-person analysis of whether cell-phone use within that time period could have been a contributing cause of the release.

In fact, the mandamus record shows that three of the five employees had no cell-phone use during this seventeen-hour period at any time when it might have distracted them from taking action to prevent the release:

- Joe Jones: no evidence of any cell-phone activity after he began monitoring the R-1201 at 10:00 a.m.[4]

- Joe Zoller: no evidence of any cell-phone activity for the thirty minutes before the release, during which he testified he was

---

[4] The mandamus record shows Jones received seven texts before 10:00 a.m. and made a three-word response to one of them.  But all of this occurred before he was tasked with monitoring the R-1201.

11

in the control room and watching what the board operators were doing.

- Mike Bowlin: no evidence he was in the control room before the release and no evidence showing how his two seconds of cell-phone activity approximately 90 minutes before the release from a location outside the control room could have contributed to the release.

Plaintiffs do not dispute this evidence. Instead, they argue that it, combined with Kuraray's alleged problems with cell-phone abuse, is sufficient to raise a fact issue as to whether these employees were distracted by their phones, making their earlier cell-phone data relevant. We disagree. There was no showing of any cell-phone activity by these three employees that reasonably could be found to be a contributing cause of the release. Accordingly, the trial court abused its discretion in ordering the production of their earlier cell-phone data.

That leaves Neal and Moorer, the two board operators whose records do reflect some cell-phone activity while they were in the control room monitoring the R-1201 in the hours preceding the release:

- Jeremy Neal, the board operator on duty from 5:30 p.m. on May 18 until 5:30 a.m. on May 19: records show ten seconds of cell-phone activity at about 1:19 a.m., when the R-1201's temperature was dropping.

- Troy Moorer, the board operator monitoring the R-1201 beginning at 5:30 a.m. on May 19: received two texts and responded to one approximately one hour before the release.

While these two employees' records reflect some cell-phone use during the timeframe in which the R-1201's temperature was dropping (in Neal's case) and after alarms were activated (in Moorer's), as the party seeking discovery, Plaintiffs bore the burden to show, and the trial court had an obligation to consider, whether the use—its nature, duration,

12

and frequency in the given context—could support a finding that cell-phone use contributed to the release. *See In re TIG*, 172 S.W.3d at 168 ("The burden to propound discovery complying with the rules of discovery should be on the party propounding the discovery, and not on the courts to redraft overly broad discovery . . . ."); *cf. Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex. 2001) ("[I]n cases with only slight circumstantial evidence, something else must be found in the record to corroborate the probability of the fact's existence or non-existence."). In the absence of such a showing, it was an abuse of discretion to order production of the employees' earlier cell-phone data.[5]

Finally, we conclude Kuraray lacks an adequate remedy by appeal because its compliance with the discovery orders would require the production of information that has not been shown to be relevant. *See In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 803 (Tex. 2017) ("Mandamus relief is appropriate when . . . a trial court compels production of irrelevant information . . . ."); *In re CSX*, 124 S.W.3d at 153 (concluding there is no adequate remedy by appeal from a discovery order requiring production of patently irrelevant documents).

Without hearing oral argument, *see* TEX. R. APP. P. 52.8(c), we conditionally grant Kuraray's petition for writ of mandamus and direct

---

[5] We do not foreclose the possibility that Plaintiffs ultimately may show themselves entitled to discovery of Neal's or Moorer's cell-phone data outside the seventeen hours preceding the release. If Neal's or Moorer's brief cell-phone use during this period, considered in context of the surrounding circumstances, is shown to be a potential contributing cause of the release, then evidence of cell-phone use outside this time period may become relevant. But no such showing was made here; accordingly, it is sufficient for today to conclude that the trial court abused its discretion by adopting a four-month temporal scope in the first instance.

13

the trial court to vacate its orders requiring Kuraray to produce cell-phone data for Neal, Moorer, Jones, Zoller, and Bowlin. We are confident the trial court will comply, and the writ will issue only if it does not.

**OPINION DELIVERED:** December 9, 2022